No. 24-1881

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————

Gun Owners of America, Inc.; Donald J. Roberts, II,

Plaintiffs-Appellants,

v.

U.S. Department of Justice; Bureau of Alcohol, Tobacco,
Firearms and Explosives; Regina Lombardo

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Eastern District of Michigan

———————————

## BRIEF FOR APPELLEES

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

JEROME F. GORGON, JR.
  *United States Attorney*

MICHAEL S. RAAB
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 514-3388*

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT

STATEMENT OF JURISDICTION ....................................................................1

STATEMENT OF THE ISSUE.........................................................................1

STATEMENT OF THE CASE..........................................................................2

    A.    Legal Background ..............................................................2

    B.    Factual and Procedural Background ...............................4

SUMMARY OF ARGUMENT.........................................................................9

STANDARD OF REVIEW ...........................................................................10

ARGUMENT ..............................................................................................10

This Appeal Should Be Dismissed Because This Case Is Moot ...................10

    A.    This Case Is Moot.............................................................10

    B.    No Mootness Exception Applies ......................................12

CONCLUSION ...........................................................................................18

CERTIFICATE OF COMPLIANCE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Abramski v. United States,*
573 U.S. 169 (2014) ................................................................................... 2

*Already, LLC v. Nike, Inc.,*
568 U.S. 85 (2013) ................................................................................... 11

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997) ................................................................................... 11

*Church of Scientology v. United States,*
506 U.S. 9 (1992) ..................................................................................... 11

*Gun Owners of Am., Inc. v. U.S. Dep't of Justice,*
No. 21-1131, 2021 WL 5194078 (6th Cir. Nov. 9, 2021) ................................. 7, 15

*Lewis v. Continental Bank Corp.,*
494 U.S. 472 (1990) ................................................................................. 17

*Ohio v. U.S. EPA,*
969 F.3d 306 (6th Cir. 2020) ................................................................. 12-13, 13

*Pioneer State Mut. Ins. Co. v. HDI Glob.,*
124 F.4th 425 (6th Cir. 2024) ..................................................................... 10

*Public Citizen, Inc. v. FERC,*
92 F.4th 1124 (D.C. Cir. 2024) ............................................................... 13, 14

*Resurrection Sch. v. Hertel,*
35 F.4th 524 (6th Cir. 2022) (en banc) .......................... 12, 13, 14, 15, 16, 17

*Speech First, Inc. v. Schlissel,*
939 F.3d 756 (6th Cir. 2019) ................................................................. 13, 14

*Spencer v. Kemna,*
523 U.S. 1 (1998) ..................................................................................... 16

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) ............................................................................. 17-18

*Thompson v. DeWine,*
7 F.4th 521 (6th Cir. 2021) ........................................................................ 12

ii

*United States v. Munsingwear, Inc.,*
   340 U.S. 36 (1950) ........................................................................... 11

*United States v. Sanchez-Gomez,*
   584 U.S. 381 (2018) ........................................................................ 11

*United States v. Texas,*
   599 U.S. 670 (2023) ........................................................................ 18

## U.S. Constitution:

Art. III, § 2, cl. 1 ............................................................................. 11

## Statutes:

Brady Handgun Violence Prevention Act,
   Pub. L. No. 103-159, 107 Stat. 1536 (1993) ...................................... 3

Gun Control Act of 1968, *codified as amended,*
   18 U.S.C. § 921 *et seq.* .................................................................... 2
      18 U.S.C. §§ 922-923 ................................................................. 3
      18 U.S.C. § 922(d) ..................................................................... 2
      18 U.S.C. § 922(g) ..................................................................... 2
      18 U.S.C. § 922(t)(1) .............................................................. 1, 3
      18 U.S.C. § 922(t)(2) ................................................................. 3
      18 U.S.C. § 922(t)(3) ........................................................... 1, 4, 8
      18 U.S.C. § 922(t)(3)(A)(ii) ....................................................... 4
      18 U.S.C. § 923(a) ..................................................................... 3
      18 U.S.C. § 923(g)(1)(A) ............................................................ 3

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1331 ................................................................................ 1

Mich. Comp. Laws § 28.422(3) .......................................................... 4

Mich. Comp. Laws § 28.425(1)(a) ...................................................... 5

Mich. Comp. Laws § 28.425b(6) ........................................................ 5

Mich. Comp. Laws § 28.426(1) .......................................................... 4

Mich. Comp. Laws § 28.426(2)(a) ........................................................ 5

**Regulations:**

28 C.F.R. § 25.1 *et seq.* ................................................................... 3

28 C.F.R. § 25.3 ............................................................................. 3

**Legislative Material:**

H.R. Rep. No. 103-344 (1993) ............................................................ 3

**Other Authorities:**

ATF, *Open Letter to All Federal Firearms Licensees* 1 (May 23, 2025),
    https://www.atf.gov/firearms/docs/open-letter/all-ffls-may-2025-
    open-letter-all-federal-firearm-licensees-brady-act-nics/download ...................... 8, 9

ATF, U.S. Dep't of Justice, *Brady Permit Chart* (last reviewed
    June 4, 2025), https://go.usa.gov/xHWkd ............................................... 4, 9

President Donald J. Trump, *Presidential Actions: Protecting Second
    Amendment Rights* (Feb. 7, 2025), https://perma.cc/3274-ALLR ..............................8

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not believe that oral argument is necessary in this case. Nevertheless, if the Court believes that oral argument would be of assistance, the government stands ready to present argument.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331.

Compl., R. 1, PageID#3. The district court entered a final judgment granting

summary judgment to defendants and dismissing plaintiffs' complaint on September

27, 2024. Judgment, R. 71, PageID#1419. Plaintiffs filed a timely notice of appeal on

October 8, 2024. Notice of Appeal, R. 72, PageID#1420. This Court has appellate

jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Before a federal firearms licensee transfers a firearm to a non-licensee, it is

generally required to conduct a background check on the potential purchaser through

the National Instant Criminal Background Check System (NICS). *See* 18 U.S.C.

§ 922(t)(1). But federal law provides exceptions to this requirement, including if the

purchaser "has presented to the licensee" a state firearms license or permit that meets

various requirements, including that "the law of the State provides that such a permit

is to be issued only after an authorized government official has verified that the

information available to such official does not indicate that possession of a firearm by

such other person would be in violation of law." *Id.* § 922(t)(3).

In 2020, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

issued a Public Safety Advisory, in which ATF informed federal licensees that it did

not believe that Michigan concealed pistol licenses met the requirements of Section

922(t)(3) and, thus, that licensees should not accept those concealed pistoled licenses

in lieu of completing the NICS background check. Plaintiffs challenged that Advisory,

and the district court ultimately dismissed their complaint for lack of standing.

Plaintiffs appealed and, while this appeal was pending, ATF issued a new open letter

to federal licensees explaining that ATF has reconsidered its earlier determination and

now believes that Michigan concealed pistol licenses qualify as valid alternatives.

The issue presented is whether this case is moot because ATF has reversed the

determination that plaintiffs challenge.

## STATEMENT OF THE CASE

### A.    Legal Background

Through the Gun Control Act of 1968, *codified as amended*, 18 U.S.C. § 921 *et*

*seq.*, Congress has "regulated sales by licensed firearms dealers, principally to prevent

guns from falling into the wrong hands," *Abramski v. United States*, 573 U.S. 169, 172

(2014). Among its provisions, the Gun Control Act designates several categories of

persons for whom it is unlawful to "receive" or "possess" "any firearm," including

those convicted of felonies, fugitives from justice, and those who have been convicted

of a misdemeanor crime of domestic violence. 18 U.S.C. § 922(g). It is unlawful to sell

or transfer a firearm "to any person knowing or having reasonable cause to believe

that such person" falls into one of those prohibited categories. *Id.* § 922(d).

To help ensure that firearms are not sold to prohibited persons—and to ensure that any firearms used in crimes may be traced—Congress has enacted a set of requirements for persons who import, manufacture, or deal in firearms. 18 U.S.C. §§ 922-923. Such persons must obtain a federal firearms license, *id.* § 923(a), and maintain records of firearm acquisition and disposition, *id.* § 923(g)(1)(A).

In addition, before transferring a firearm to a non-licensee, a licensee is generally required to conduct a background check on the transferee through NICS. *See* 18 U.S.C. § 922(t)(1). This requirement originates in the Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536 (1993) (Brady Act), which Congress enacted in 1993 after finding that prohibited persons continued to have "relatively easy access to guns," *see* H.R. Rep. No. 103-344, at 9 (1993). In enacting the Brady Act, Congress observed that "[t]he majority of States" did not require background checks to purchase firearms, even though such checks are a "crucial tool for ensuring that laws prohibiting the sale of handguns to criminals are observed." *Id.* at 10.

To combat that problem, the Brady Act directed the Attorney General to establish and operate a national background check system for licensed firearms dealers to contact before transferring firearms to potential purchasers. *See* 18 U.S.C. § 922(t)(1), (2). Pursuant to this mandate, the Attorney General established NICS, *see* 28 C.F.R. § 25.1 *et seq.*, which is administered by the Federal Bureau of Investigation (FBI), *see id.* § 25.3.

3

At the same time, Congress has provided for a handful of exceptions to the general requirement that a licensee conduct a NICS background check before transferring a firearm to a non-licensee. *See* 18 U.S.C. § 922(t)(3). Of particular relevance to this case, a federal firearm licensee is not required to conduct a NICS check if a potential purchaser (1) presents a state firearms permit issued within the past five years; and (2) "the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by [the] person would be in violation of law." *Id.* § 922(t)(3)(A)(ii).

To help licensees comply with the statutory background check requirement, ATF issues notices articulating the agency's understanding of which state permits qualify as valid alternatives under Section 922(t)(3), *see, e.g.*, Administrative Record (AR), R. 16-1, PageID#187, and ATF also maintains a list of qualifying state permits, *see* ATF, U.S. Dep't of Justice, *Brady Permit Chart* (last reviewed June 4, 2025), https://go.usa.gov/xHWkd.

### B.    Factual and Procedural Background

1. Michigan law provides for two types of firearms permits. First, Michigan authorizes local police to issue permits to purchase or acquire pistols. Mich. Comp. Laws § 28.422(3); *see id.* § 28.426(1) (similar). Michigan licenses to purchase have been recognized by ATF as a valid alternative to a background check through NICS since 1998, *see* AR, R. 16-1, PageID#88, and those licenses are not at issue here.

4

Second, Michigan law provides for "concealed pistol license[s]." Mich. Comp. Laws § 28.425(1)(a). Among other requirements, in order to receive a Michigan concealed pistol license, "[t]he department of state police, or the county sheriff," must "determine[] through the federal national instant criminal background check system that the applicant is not prohibited under federal law from possessing or transporting a firearm." *Id.* § 28.426(2)(a); *see also id.* § 28.425b(6) (providing that state police must "verify" relevant requirements "through the law enforcement information network and the national instant criminal background check system").

Michigan enacted this background check requirement in November 2005. *See* AR, R. 16-1, PageID#91. The following year, the Michigan Attorney General wrote to ATF to request that the agency determine that Michigan concealed pistol licenses qualify as a valid alternative to a NICS check. *Id.*, PageID#143. At the time, ATF's understanding was that "the issuance process" for Michigan concealed pistol licenses would require "[a] full NICS check be[] conducted by an authorized Michigan government official"; "[a] determination made by that official that the permit holder is not prohibited under federal or state law from possessing firearms"; and that "[t]he permit be[] denied if the individual is prohibited from possessing a firearm under federal (or state) law." *Id.* On that understanding, ATF advised federal firearm licensees that Michigan concealed pistol licenses issued after November 2005 would qualify as valid alternatives under Section 922(t)(3) to a background check through NICS. *Id.*, PageID#91.

2. In 2017, the federal government learned that ATF's understanding of the background check requirement under Michigan law did not reflect Michigan officials' implementation of that requirement. *See* AR, R. 16-1, PageID#144, 191. In particular, ATF came to understand that although the Michigan State Police were "accessing the NICS databas[e]" when performing background checks connected to concealed pistol licenses, state officials were "not conducting the necessary follow-up to determine whether a [concealed pistol license] applicant was in fact prohibited from possessing firearms if the NICS Indices showed a potential, but not definitive, federal prohibition for which there was no state law equivalent." Epstein Decl., R. 58-1, PageID#1199; *see also* AR, R. 16-1, PageID#144, 191.

Following extensive discussions over the ensuing three years between Michigan and federal officials, ATF ultimately began the process of rescinding its previous determination that a Michigan concealed pistol license qualifies as a background-check alternative. Epstein Decl., R. 58-1, PageID#1205. Thus, in March 2020, ATF issued a Public Safety Advisory to all Michigan federal firearms licensees informing them that ATF no longer believed that Michigan concealed pistol licenses qualify under Section 922(t)(3) as valid alternatives to a federal background check. *See* AR, R. 16-1, PageID#187-88.

3. Plaintiffs—a nonprofit membership organization and a Michigan resident who possesses a concealed pistol license—brought this suit under the Administrative Procedure Act (APA). *See* Compl., R. 1, PageID#3. At a high level, they claim that

ATF's Advisory is arbitrary and capricious and exceeds ATF's statutory jurisdiction. *See id.*, PageID#15-17.

The district court initially granted summary judgment for the government on the merits, and plaintiffs appealed to this Court. This Court issued an unpublished opinion that vacated the district court's judgment and remanded for further proceedings. *See Gun Owners of Am., Inc. v. U.S. Dep't of Justice*, No. 21-1131, 2021 WL 5194078 (6th Cir. Nov. 9, 2021) (per curiam). In issuing that opinion, the Court rejected what it understood as both parties' lead legal arguments and explained that it believed that the "case itself could benefit from more available information." *Id.* at *4-5 (quotation omitted). That information included additional information about the "requirements of state law," about the operation of the NICS database, about the process of identifying potential matches to NICS records, and about ATF's understanding of the Brady Act. *Id.* at *5.

On remand, the district court allowed the parties to supplement the record with additional factual information. The parties then cross-moved for summary judgment, and the district court granted the government's motion on the basis that plaintiffs had not demonstrated Article III standing. *See* Op. 1-2, R. 70, PageID#1399-1400.

4. Plaintiffs appealed. While the case was pending on appeal, there was a change in administration, which led to new agency leadership at the Department of Justice and ATF. ATF's new leadership then "conducted a review of the laws and regulations of all U.S. states and territories" to "determine whether relevant firearms-

7

related permits meet the requirements of 18 U.S.C. § 922(t)(3) and whether [federal licensees] may accept such permits in lieu of a NICS background check prior to transferring a firearm to a nonlicensee." ATF, *Open Letter to All Federal Firearms Licensees* 1 (May 23, 2025) (ATF Open Letter), https://www.atf.gov/firearms/docs/open-letter/all-ffls-may-2025-open-letter-all-federal-firearm-licensees-brady-act-nics/download.

That comprehensive review of potential Section 922(t)(3) alternatives also occurred against the backdrop of a broader review of firearms-related matters directed by President Trump. On February 7, 2025, President Trump issued an Executive Order titled *Protecting Second Amendment Rights*. *See* President Donald J. Trump, *Presidential Actions: Protecting Second Amendment Rights* (Feb. 7, 2025), https://perma.cc/3274-ALLR. Among other things, the Order directs the Attorney General to "examine" various "actions of executive departments and agencies" to "assess any ongoing infringements of the Second Amendment rights of our citizens, and present a proposed plan of action to the President, through the Domestic Policy Advisor, to protect the Second Amendment rights of all Americans." *Id.* § 2(a).

On May 23, 2025, ATF issued an open letter to all federal firearms licensees to inform them of its determinations regarding which state permits qualify as valid Section 922(t)(3) alternatives. That open letter included a link to a chart that "reflects ATF's current assessment of all permits pursuant to this review." *See* ATF Open Letter 1-2. And, as ATF explained, the chart "includes updates or clarifications to the

status of a state permit" in twelve states and Puerto Rico. *Id.* Of particular relevance here, ATF has now determined that Michigan concealed pistol licenses qualify as valid alternatives. *See* ATF, *Brady Permit Chart*, *supra*. Thus, ATF's previous Advisory to the contrary—which plaintiffs challenge in this case—has now been superseded by this new determination. *See* ATF Open Letter 3 ("The guidance set forth in this letter and the new chart on atf.gov supersedes all previous ATF open letters on NICS alternate permits, including open letters as to whether a particular jurisdiction's firearms permit(s) qualify as an alternative to the NICS check.").

## SUMMARY OF ARGUMENT

This appeal should be dismissed because this case is moot. In general, a case becomes moot once the court may no longer grant effectual relief to the prevailing party. And here, ATF has reconsidered the determination challenged in this case and has concluded that Michigan concealed pistol licenses qualify as valid background-check alternatives. Therefore, ATF's previous policy no longer has any effect, and this suit is moot.

Although in some circumstances an exception to the mootness doctrine may permit a court to resolve a case after the challenged policy has been rescinded, none of those exceptions applies here. The voluntary-cessation exception to mootness does not apply because there is no fair prospect that ATF will engage in the challenged conduct again in the foreseeable future. ATF reversed the challenged determination not because of this lawsuit but instead as part of a broader reassessment of firearms-

9

related regulations generally and ATF's Section 922(t)(3) determinations specifically. ATF does not continue to defend the 2020 Advisory's determination on the merits; instead, ATF agrees with plaintiffs that the 2020 Advisory did not reflect the correct conclusion. And even if ATF were to reconsider its new position at some hypothetical future point, that reconsideration would result in new agency action with a new record and a new explanation—and any challenge to that new action would thus not be materially similar to plaintiffs' challenge in this case to the 2020 Advisory.

Nor is this dispute capable of repetition yet evading review. For all the reasons that the voluntary-cessation exception does not apply, it is also not likely that plaintiffs will again be subject to the same challenged action. And regardless, ATF's determinations in this context are not of inherently short duration and so there is no reason to believe that any future agency action will evade review.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of summary judgment de novo." *Pioneer State Mut. Ins. Co. v. HDI Glob.*, 124 F.4th 425, 428 (6th Cir. 2024).

## ARGUMENT

### THIS APPEAL SHOULD BE DISMISSED BECAUSE THIS CASE IS MOOT

### A.    This Case Is Moot

ATF has now reconsidered the determination that plaintiffs challenge and has concluded that Michigan concealed pistol licenses qualify as valid background-check

alternatives under Section 922(t)(3). Thus, this case is moot, and plaintiffs' appeal should be dismissed.[1]

The Constitution limits the federal courts' jurisdiction to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review[.]" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quotation omitted). Thus, a "case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

A case has become moot when "the parties lack a legally cognizable interest in [its] outcome." *Already*, 568 U.S. at 91 (quotation omitted). That is true if an intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91.

---

[1] Because this case has become moot while on appeal through ATF's new superseding determination, the government would not oppose any request from plaintiffs to vacate the district court's judgment. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).

11

As explained, ATF has now reconsidered the policy challenged in this case. It has determined that the 2020 Advisory was incorrect and that Michigan concealed pistol licenses qualify as valid Section 922(t)(3) alternatives. *See supra* pp. 7-9. Because ATF has now informed federal firearms licensees that it believes they may accept Michigan concealed pistol licenses in lieu of a background check, the 2020 Advisory to the contrary no longer has any effect and the courts cannot grant any effective relief as to that superseded agency action. Thus, plaintiffs lack any legally cognizable interest in the continuation of this suit, and "the case is moot." *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc) (quotation omitted).

## B.    No Mootness Exception Applies

In some rare circumstances, "exceptions to the mootness doctrine" may permit a court to continue exercising jurisdiction over a case even where the challenged conduct has ceased. *Resurrection Sch.*, 35 F.4th at 528. For example, a "defendant's voluntary cessation of challenged conduct" will not moot a case if there is a "reasonable expectation that the alleged violation will recur." *Id.* (quotation omitted). Or a dispute may be "capable of repetition but evading review." *Thompson v. DeWine*, 7 F.4th 521, 525 (6th Cir. 2021) (per curiam). But these exceptions to the usual rule do not apply in this case.

1. This Court has explained that a "defendant's voluntary cessation of the challenged conduct" does not moot a case if "that conduct can reasonably be expected to recur." *Ohio v. U.S. EPA*, 969 F.3d 306, 310 (6th Cir. 2020) (quotation

omitted). For this standard to be satisfied, "there must be a fair prospect that the conduct will recur in the foreseeable future," *id.*, and the potential recurrence would need to be "similar enough" to the challenged conduct "to present substantially the same legal controversy" as the original suit, *Resurrection Sch.*, 35 F.4th at 529 (quotation omitted). This exception to mootness "is grounded in concerns that a party may be manipulating the judicial process through the false pretense of singlehandedly ending a dispute." *Public Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (quotation omitted).

In assessing whether the challenged conduct is likely to recur, this Court treats the defendant's cessation "with more solicitude" when "it is the government"—rather than a private party—"that has voluntarily ceased its conduct." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) (quotation omitted). The government "receives this solicitude because courts assume that the government acts in good faith"; as a result, "the government's self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Id.* (alterations and quotation omitted). In other words, this Court "presume[s] that the same allegedly wrongful conduct by the government is unlikely to recur." *Id.*

Multiple features of this case make clear that the voluntary cessation exception to mootness does not apply. First, ATF has reversed the challenged determination "not in response to this lawsuit, but" five years later for unrelated reasons and "along with several other" new determinations. *Resurrection Sch.*, 35 F.4th at 529. As explained,

13

ATF issued its new determination following a change in administration, when the President directed a broad review of firearms-related regulations and ATF conducted a new comprehensive review of which permits qualify as valid background-check alternatives under Section 922(t)(3). As part of that review, ATF has updated or clarified its determinations with respect to permits in 12 different states, including the Michigan concealed pistol licenses at issue in this case. *See supra* pp. 7-9. Given this context, there should be no dispute that ATF's "cessation of the challenged conduct" is "genuine," not a manipulation of the judicial process, and thus the conduct is unlikely to recur. *Resurrection Sch.*, 35 F.4th at 529 (quotation omitted); *cf. Public Citizen*, 92 F.4th at 1128 (explaining that "courts have declined to apply the [voluntary cessation] doctrine when the facts do not suggest any arguable manipulation of our jurisdiction" (quotation omitted)).

Second, ATF does not "continue[] to defend" the 2020 Advisory. *Speech First*, 939 F.3d at 770. This Court has explained that, "[a]lthough not dispositive," it is "important to the mootness inquiry" whether "the government vigorously defends" the lawfulness of the challenged conduct. *Id.* (quotation omitted). In this case, ATF did not reverse its conclusion regarding Michigan concealed pistol licenses merely for discretionary or policy-based reasons while maintaining that the old determination was legally correct. Instead, as ATF's recent open letter reflects, ATF now believes that Michigan concealed pistol licenses qualify as valid background-check alternatives

and that its previous, contrary determination was incorrect. It is thus unlikely that ATF will resume the challenged conduct in the foreseeable future.

Finally, even if ATF were, at some point in the future, to reconsider its determination that Michigan concealed pistol licenses qualify as valid background-check alternatives, that hypothetical future determination "likely would not present substantially the same legal controversy as the one originally presented here." *Resurrection Sch.*, 35 F.4th at 529. In this case, plaintiffs' arguments focus in substantial part on whether the 2020 Advisory was arbitrary and capricious, including on the question whether the Advisory's determination was sufficiently supported by the administrative record at the time. Thus, for example, plaintiffs argue at length about whether the 2020 Advisory was supported—at the time of its issuance—by any authoritative evidence about how Michigan officials interpreted and applied state law. *See* Br. 34-41. And plaintiffs contend that the 2020 Advisory was arbitrary and capricious, because in issuing it, ATF "failed to consider" important aspects of the problem. Br. 46-51. Moreover, in remanding the previous appeal in this case, this Court suggested that the proper resolution of this case might not turn on only the resolution of purely legal questions but may also involve information that was not available in the record at the time. *See Gun Owners of Am., Inc. v. U.S. Dep't of Justice*, No. 21-1131, 2021 WL 5194078, at *4-5 (6th Cir. Nov. 9, 2021) (per curiam).

Thus, even if ATF were to again conclude that Michigan concealed pistol licenses do not qualify as valid background-check alternatives, that future conclusion

would not likely result in substantially the same legal controversy as this case. Instead, any future decision would necessarily rest on a different factual record and would include a new explanation from the agency, which would result in materially different potential APA claims. Other relevant factors are likewise subject to change. For example, a Michigan judicial decision may alter Michigan's interpretation of state law requirements in ways that could bear on any future ATF determination. It is thus unlikely that any future dispute would present the same legal controversy as this case.

2. Nor is this dispute subject to the exception from mootness for cases that are capable of repetition yet evading review. That "doctrine applies only in exceptional situations, where the following two circumstances are simultaneously present": first, there must be "a reasonable expectation that the same complaining party will be subject to the same action again"; and second, the challenged action must be "in its duration too short to be fully litigated prior to cessation or expiration." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations, citation, and quotation omitted). This case fails to satisfy either condition.

First, "for largely the same reasons" that the voluntary cessation exception is inapposite, there is no reasonable expectation that plaintiffs will be subject to the same challenged action again. *Resurrection Sch.*, 35 F.4th at 530. The context and reasoning of ATF's new decision makes clear that ATF is not likely to reverse itself in the near future. And regardless, the challenged Advisory "was a product of" a specific agency record and explanation, and "plaintiffs' objections to it are grounded in the

[Advisory's] particulars." *Id.* This Court is thus "unlikely to see this [dispute] in a similar form again." *Id.*

Second, and in any event, ATF's determination that a state permit does not qualify as Section 922(t)(3) background-check alternatives is not "the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to evade review." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990) (alteration and quotation omitted). ATF's determinations in this area do not come with any inherent expiration date, and there is every reason to believe that, in the ordinary case, there would be "ample time to obtain judicial review" of any such determination, *id.* at 482.

This case illustrates the point. ATF issued the challenged 2020 Advisory in March 2020, and it remained in effect for more than five years. *See* AR, R. 16-1, PageID#187-88. During that time, the parties have litigated this case to a final judgment in district court, through a full appeal in this Court, and to a second final judgment on remand. There is thus no likelihood that any future ATF determination regarding Michigan concealed pistol licenses would evade review.[2]

---

[2] The government no longer disputes that Roberts and, by extension, the Gun Owners of America had standing to bring this challenge to the Advisory. Roberts is incorrect to contend that the Advisory injures him simply by "den[ying] or revo[king]" a "government benefit." Br. 19. To the contrary, the Supreme Court has made clear that such an asserted bare violation of a legal right does not establish an Article III injury. Instead, Article III demands "a concrete injury even" where a plaintiff alleges that a defendant has committed "a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S.

*Continued on next page.*

## CONCLUSION

For the foregoing reasons, this appeal should be dismissed for lack of jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

JEROME F. GORGON, JR.
  *United States Attorney*

MICHAEL S. RAAB

  *s/ Sean R. Janda*
SEAN R. JANDA
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

June 2025

---

330, 341 (2016). Nonetheless, in the circumstances of this case, the government now believes that the requirement that Roberts undergo a background check before purchasing a firearm does qualify as a concrete injury separate from the asserted legal violation. That requirement imposes an additional regulatory barrier to the purchase and forces Roberts to engage in additional steps to complete the purchase. The need to comply with that regulatory hurdle reflects a concrete injury sufficient to satisfy Article III. *Cf. United States v. Texas*, 599 U.S. 670, 688 (2023) (Gorsuch, J., concurring in the judgment) ("[E]ven one dollar's worth of harm is traditionally enough to qualify as concrete injury under Article III." (quotation and alteration omitted)).

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4347 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the government designates the

following district court documents as relevant:

| Record Entry | Description | Page ID # Range |
|---|---|---|
| R. 1 | Complaint | 1-37 |
| R. 16 | Administrative Record | 83-402 |
| R. 58-1 | Second Epstein Declaration | 1197-207 |
| R. 70 | District Court Opinion and Order | 1399-418 |
| R. 71 | Judgment | 1419 |
| R. 72 | Notice of Appeal | 1420 |

**ADDENDUM**

# TABLE OF CONTENTS

18 U.S.C. § 922(t).................................................................................A1

**18 U.S.C. § 922**

**§ 922. Unlawful acts**

. . .

(t)(1) Beginning on the date that is 30 days after the Attorney General notifies licensees under section 103(d) of the Brady Handgun Violence Prevention Act that the national instant criminal background check system is established, a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter, unless—

(A) before the completion of the transfer, the licensee contacts the national instant criminal background check system established under section 103 of that Act;

(B)(i) the system provides the licensee with a unique identification number; or

(ii) subject to subparagraph (C), 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that the receipt of a firearm by such other person would violate subsection (g) or (n) of this section, or State, local, or Tribal law;

(C) in the case of a person less than 21 years of age, in addition to all other requirements of this chapter—

(i) the system provides the licensee with a unique identification number;

(ii) 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d); or

(iii) in the case of such a person with respect to whom the system notifies the licensee in accordance with clause (ii) that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d), 10 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that—

(I) transferring the firearm to the other person would violate subsection (d) of this section; or

(II) receipt of a firearm by the other person would violate subsection (g) or (n) of this section, or State, local, or Tribal law; and

A1

(D) the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee.

(2) If transfer or receipt of a firearm would not violate subsection (d), (g), or (n) (as applicable) or State, local or Tribal law, the system shall—

(A) assign a unique identification number to the transfer;

(B) provide the licensee with the number; and

(C) destroy all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer.

(3) Paragraph (1) shall not apply to a firearm transfer between a licensee and another person if—

(A)(i) such other person has presented to the licensee a permit that—

(I) allows such other person to possess or acquire a firearm; and

(II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and

(ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law;

(B) the Attorney General has approved the transfer under section 5812 of the Internal Revenue Code of 1986; or

(C) on application of the transferor, the Attorney General has certified that compliance with paragraph (1)(A) is impracticable because—

(i) the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;

(ii) the business premises of the licensee at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer (as defined in subsection (s)(8)); and

(iii) there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

(4) If the national instant criminal background check system notifies the licensee that the information available to the system does not demonstrate that the transfer of a

firearm to or receipt of a firearm by such other person would violate subsection (d), (g), or (n) (as applicable) or State local, or Tribal law, and the licensee transfers a firearm to such other person, the licensee shall include in the record of the transfer the unique identification number provided by the system with respect to the transfer.

(5) If the licensee knowingly transfers a firearm to such other person and knowingly fails to comply with paragraph (1) of this subsection with respect to the transfer and, at the time such other person most recently proposed the transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that transfer of a firearm to or receipt of a firearm by such other person would violate subsection (d), (g), or (n) (as applicable) of this section or State 5 local, or Tribal law, the Attorney General may, after notice and opportunity for a hearing, suspend for not more than 6 months or revoke any license issued to the licensee under section 923, and may impose on the licensee a civil fine of not more than $5,000.

(6) Neither a local government nor an employee of the Federal Government or of any State or local government, responsible for providing information to the national instant criminal background check system shall be liable in an action at law for damages—

> (A) for failure to prevent the sale or transfer of a firearm to a person whose receipt or possession of the firearm is unlawful under this section; or

> (B) for preventing such a sale or transfer to a person who may lawfully receive or possess a firearm.