No. 24-1881

## In the United States Court of Appeals
## for the Sixth Circuit

DONALD J. ROBERTS, II, AND GUN OWNERS OF AMERICA, INC.,
Plaintiffs-Appellants,

v.

U.S. DEPARTMENT OF JUSTICE, BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES, AND DANIEL DRISCOLL,[1] in his official capacity as Acting Director,
Bureau of Alcohol, Tobacco, Firearms and Explosives,
Defendants-Appellees.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
The Honorable District Court Judge Thomas L. Luddington
Civil Action No. 1:20-cv-10639

## REPLY BRIEF FOR APPELLANTS

Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180
T: (703) 356-5070
rob@wjopc.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
stephen@sdslaw.us

Kerry Lee Morgan
PENTIUK, COUVREUR & KOBILJAK, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
T: (734) 281-7100
kmorgan@pck-law.com

Dated: July 3, 2025

---

[1] Pursuant to Fed. R. App. P. 43(c)(2), ATF Acting Director Daniel Driscoll is
automatically substituted for Steven Dettelbach.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………ii

SUMMARY OF ARGUMENT…………………………………………….………1

ARGUMENT…………………………………………………………………………4

I.    THIS CASE IS NOT MOOT…………………………………………………..4

    A. Defendants' Actions Reek of Voluntary Cessation………………………4

        1.  Defendants Misrepresent the Proper Standard………………………..5

        2.  "Solicitude" Gets Defendants Nowhere in This Case…………………7

        3.  Defendants' Proffers of Legitimacy Fall Flat………………………..13

        4.  This Court Can Still Grant Effectual Relief…………………………17

    B. Defendants' Actions Are Capable of Repetition, Yet Evading Review…20

II.   THIS COURT SHOULD ISSUE A MERITS JUDGMENT AND
    REMAND FOR A FEE AWARD……………………………………………..23

CONCLUSION………………………………………………………………...25

# TABLE OF AUTHORITIES

**Statutes**

5 U.S.C. § 706……………………………………………………………………...3

18 U.S.C. § 922(t)(3)……………………………………………………1, 3, 18, 24

MCL § 28.425*l*……………………………………………………………………19

MCL § 28.426………………………………………………………………..1, 3, 24


**Cases**

*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000)……………………….4

*Associated Energy Grp., LLC v. United States*, 131 F.4th 1312 (Fed. Cir. 2025)...23

*Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016)………………………………………20

*Bourgeois v. Peters*, 387 F.3d 1303 (11th Cir. 2004)……………………………..23

*Browder v. Wormuth*, 2024 U.S. Dist. LEXIS 229365 (D.D.C. Dec. 19, 2024)….18

*Citizens Against the Pellissippi Parkway v. Mineta*, 375 F.3d 412
    (6th Cir. 200)…………………………………………………………………12

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)………………………………...20

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)…………………..4

*Daily Servs., LLC v. Valentino*, 756 F.3d 893 (6th Cir. 2014)……………………18

*Del. Dep't of Nat. Res. & Env't Control v. EPA*, 746 F. App'x 131
    (3d Cir. 2018)………………………………………………………………...23

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316
    (D.C. Cir. 2009)……………………………………………………15, 21, 23

*Doster v. Kendall*, 2025 U.S. App. LEXIS 11679 (6th Cir. May 12, 2025)…..18, 19

*Empower Texans, Inc. v. Geren*, 977 F.3d 367 (5th Cir. 2020)……………………23

*FBI v. Fikre*, 601 U.S. 234 (2024)………………………………………………...4, 5, 6, 16

*Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507
    (8th Cir. 2024)…………………………………………………………………...17

*First Nat'l Bank v. Bellotti*, 435 U.S. 765 (1978)…………………………………22

*F.J. Vollmer Co. v. Higgins*, 23 F.3d 448 (D.C. Cir. 1994)………………………..17

*Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446 (6th Cir. 2021) *superseded by*
    *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890 (6th Cir. 2021)…...……17

*Gun Owners of Am., Inc. v. United States DOJ*, 2021 U.S. App. LEXIS 33554
    (6th Cir. Nov. 9, 2021)…………………………………………………...15

*Hamilton v. Bromley*, 862 F.3d 329 (3d Cir. 2017)………………………………..11

*League v. Bonneville Power Admin.*, 2025 U.S. App. LEXIS 15852
    (9th Cir. June 26, 2025)…………………………………………………8, 16

*Macktal v. Chao*, 286 F.3d 822 (5th Cir. 2002)…………………………………...12

*Mock v. Garland,* 75 F.4th 563 (5th Cir. 2023)……………………………………17

*Mock v. Garland*, 2024 U.S. Dist. LEXIS 105230 (N.D. Tex. June 13, 2024)……17

*Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 697 F. Supp. 3d 601 (N.D. Tex. 2023)..17

*Nauman v. Wormuth*, 2024 U.S. Dist. LEXIS 219294 (D. Kan. Dec. 4, 2024)…...16

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976)…………………………………22

*Phillips v. Pa. Higher Educ. Assistance Agency*, 657 F.2d 554 (3d Cir. 1981)…….9

*Resurrection Sch. v. Hertel*, 35 F.4th 524 (6th Cir. 2022)……………………..14, 21

*Richmond Med. Ctr. for Women v. Gilmore*, 55 F. Supp. 2d 441 (E.D. Va. 1999)...10

*Sea Shepherd N.Z. v. United States*, 639 F. Supp. 3d 1367 (Int'l Trade 2023)……23

*Sewell v. Sec'y of HHS*, 2012 U.S. Claims LEXIS 647 (Fed. Cl. May 25, 2012)...23

*Simes v. Ark. Jud. Discipline & Disability Comm'n*, 734 F.3d 830
    (8th Cir. 2013)………………………………………………………...23

*Speech First, Inc. v. Schissel*, 939 F.3d 756 (6th Cir. 2019)…………………passim

*Sullivan v. Benningfield*, 920 F.3d 401 (6th Cir. 2019)…………………………….5

*Talmer Bank & Tr. v. Minton Firm, P.C.*, 660 F. App'x 439 (6th Cir. 2016)……...24

*Thomas v. City of Memphis*, 996 F.3d 318 (6th Cir. 2021)…………………………7

*United Food & Com. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422
    (8th Cir. 1988)…………………………………………………………………9

*United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994)…..24

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950)………………………….24

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)…………………………...13

*Walters v. Dale*, 53 F.4th 176 (6th Cir. 2022)……………………………………20, 23

*Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852 (9th Cir. 2022)…………...23


**Regulations**
2020 Public Safety Advisory……………………………………………………passim


**Other Authorities**
*Biden Targets 'Ghost Guns' with Executive Actions to Combat Gun Violence*,
    Denver7 (Apr. 8, 2021)……………………………………………………….10

*Memorandum for all Department Employees*, Off. of the Att'y Gen.
    (Apr. 8, 2025)………………………………………………………………..9

iv

*Open Letter to All Federal Firearms Licensees*, <u>BATFE</u> (May 23, 2025)………..11

Oral Argument, *Gun Owners of Am., Inc. v. DOJ*, No. 21-1131
    (6th Cir. Oct. 26, 2021)…………………………………………………….20

*Protecting Second Amendment Rights*, <u>White House</u> (Feb. 7, 2025)………………9

Testimony of Alex Bosco, *ATF's Assault on the Second Amendment: When Is
    Enough Enough?*, Joint Hearing Before the Subcommittee on Economic
    Growth, Energy Policy, and Regulatory Affairs (Mar. 23, 2023)………..…16

## SUMMARY OF ARGUMENT

After more than five years of litigation and two trips to this Court, Defendants now recant *everything* they have said thus far.  Having spent years defending a 2020 Public Safety Advisory ("PSA") issued by Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Defendants now "agree[] with plaintiffs" that ATF's "determination was incorrect."  Although having submitted hundreds of pages of briefing explaining how MCL § 28.426 does *not* qualify for an exemption under 18 U.S.C. § 922(t)(3), Defendants now argue that it *does*.  Finally, although having argued that Plaintiffs clearly did *not* have standing to bring the case in the first place, Defendants now concede that Plaintiffs clearly *did*.

But no matter – nothing to see here – Defendants say.  Because their newly-minted 2025 letter has now reversed their 2020 reversal of their 2006 determination, they claim this Court is entirely deprived of jurisdiction to decide this case.  But this sort of 'heads I win, tails you lose' argument is *obviously* wrong, for a number of reasons.

First, mootness requires there be "no reasonable expectation that the alleged violation will recur."  Instead, Defendants promise that there is no "fair prospect" that they will violate the law "again in the foreseeable future," apparently a reference to this presidential administration.  But although noting that "there was a change in administration … [w]hile the case was on appeal," Defendants omit that there in fact

1

have been *two* changes in administrations, and that it was this very President's ATF that promulgated the challenged 2020 letter in the first place. Defendants offer absolutely no assurances that this administration might not simply change directions again.

Second, mootness also demands that a governmental action not be "capable of repetition yet evading review." Defendants highlight that their "2020 Advisory … remained in effect for more than five years," while "the parties have litigated this case to a final judgment in the district court." But that observation counts for nothing. When it comes to "evading review," courts – including this Court – are uniform that "evading review" means "'complete judicial review,' including 'plenary review' by the Supreme Court." And because the sort of agency letter challenged in this case can be issued, unissued, and reissued within minutes, solely at the whim and pleasure of unelected bureaucrats, it is quintessentially the sort of agency action that evades review and whose inherently temporary rescission does not moot a case.

Because this case is not moot, the only appropriate question is how this Court should resolve the matter. For starters, Defendants now agree that Plaintiffs have standing to maintain this action. And this Court already has (at least) implicitly agreed, previously ordering supplemental briefing on standing, then excoriating Defendants' position at oral argument, and then rendering a decision on the merits.

2

There is no reasonable question that the district court's dismissal on standing was improper, and should be vacated.

Then there is the question of the 2020 PSA. Defendants now concede that their prior determination conflicts with the statute it applied, making it definitionally a violation of 5 U.S.C. § 706, the basis of several of Plaintiffs' claims. Previously, this Court torched ATF's legal arguments, but ultimately gave ATF one last try to justify its actions. Yet despite numerous opportunities during nearly four years on remand, Defendants were unable to offer a shred of evidence to further justify their position. In other words, under the framework for remand established in this Court's prior opinion, Defendants failed spectacularly.

Because Defendants have failed to justify their 2020 PSA, this Court should (i) reject Defendants' eleventh-hour attempt to moot this case, (ii) find that MCL § 28.426 qualifies for Brady Alternate status under 18 U.S.C. § 922(t)(3), (iii) declare the 2020 PSA was unlawfully promulgated, (iv) enjoin Defendants from future attempts to revoke the Brady Alternate status of Michigan permits absent an intervening change in state or federal law, and (v) vacate the judgment below and remand the case to the district court for an award of attorneys' fees pursuant to the Equal Access to Justice Act.

## ARGUMENT

## I.     THIS CASE IS NOT MOOT.

Defendants' latest argument is simple, and simply wrong.  They claim that, since they have changed their minds (for now) and "reversed the determination that plaintiffs challenge," then "this case is moot."  Brief for Appellees ("Gov't Br.") at 2.  Thus, Defendants seek to evade review based not on any intervening change in law or a change in Plaintiffs' willingness to pursue this suit, but rather Defendants' own voluntary attempt to deprive this Court of jurisdiction.  But this is precisely what the well-settled exceptions to the mootness doctrine were designed to prevent, and Defendants' arguments to the contrary are unavailing.

### A. Defendants' Actions Reek of Voluntary Cessation.

A "defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur,'" a "standard [which] holds for governmental defendants no less than for private ones." *FBI v. Fikre*, 601 U.S. 234, 235 (2024).  The standard is met "only if" the government's showing makes it "absolutely clear" that its conduct will not recur.  *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (per curiam).  Importantly, mootness is a "defendant's 'burden to establish'...."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982).  Finally, and as applicable here, "what matters is not whether a defendant repudiates its past actions, but what

the defendant can prove about its future conduct." *Id.* All told, this is a "formidable standard" (*Fikre*, 601 U.S. at 235) that Defendants' empty proffers do not even begin to meet.

### 1. Defendants Misrepresent the Proper Standard.

As a preliminary matter, the burden of showing mootness falls squarely on the government, which must demonstrate beyond reasonable expectation that its violation will not recur. Defendants' brief, however, repeatedly reimagines this standard in favor of the government.

First, Defendants claim that it is only in "*rare circumstances*" that a case should <u>not</u> be declared moot. Gov't Br. 12 (emphasis added). But in fact, the polar opposite is true – "it is *exceedingly rare* … for a defendant's voluntary termination of allegedly wrongful activity to render an appeal moot." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (emphasis added). And that makes sense, since demonstrating mootness is a "formidable standard" (*Fikre*, 601 U.S. at 235) and imposes a "heavy burden" (*Sullivan*, 920 F.3d at 410) to justify a departure from the ordinary course where courts 'say what the law is' and resolve legal disputes between parties.

Second and relatedly, Defendants claim that mootness is the "*usual rule*." Gov't Br. at 12 (emphasis added). But again, this Court has said exactly the opposite, explaining that "[v]oluntary cessation … does *not*, as a *general rule*, moot a case."

*Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) (emphasis added); *see also Carpenter-Barker v. Ohio Dep't of Medicaid*, 752 F. App'x 215, 222 (6th Cir. 2018) ("voluntary cessation … ordinarily does not suffice to moot a case").

Third, Defendants attempt to shift their "heavy burden" to Plaintiffs, claiming that "'voluntary cessation' … will not moot a case *if there is* a 'reasonable expectation that the alleged violation will recur.'" Gov't Br. at 12 (emphasis added). But Defendants' framing makes mootness the default, with the burden on Plaintiffs to show that "there is" an expectation of recurrence. Rather, mootness applies "*only if* the defendant can" show *that there is not*. *Fikre*, 601 U.S. at 235 (emphasis added).

And fourth, Defendants seek to water down the standard for recurrence of unlawful conduct, pinky swearing that they will not reverse themselves (again) in the "foreseeable future." Gov't Br. at 15. But Plaintiffs are not aware of any case that imposes a temporal limitation on when recurrence reasonably might occur. Once again, the opposite is true: voluntary cessation will not moot a case "whether the challenged conduct might recur immediately *or later at some more propitious moment*." *Fikre*, 601 U.S. at 243 (emphasis added). It would seem that Plaintiffs are looking further down the road than Defendants, who apparently cannot imagine a world past their own tenure.

### 2.  "Solicitude" Gets Defendants Nowhere in This Case.

Next, Defendants rely heavily on this Court's decision in *Speech First, Inc. v. Schissel*, 939 F.3d 756 (6th Cir. 2019), but they conspicuously omit the most important language from that opinion.  Noting that "this Court treats the defendant's cessation 'with more solicitude' when 'it is the government' – rather than a private party," Defendants assert that, because they are the government, this Court should simply "'presume[] that the same allegedly wrongful conduct … is unlikely to recur'" without further analysis.  Gov't Br. at 13 (quoting *Speech First, Inc.*, 939 F.3d at 767).  But Defendants' selective quotations omit what this Court said next – explaining that, "not all [government] action enjoys the same degree of solicitude." *Speech First, Inc.*, 939 F.3d at 768.  Thus, contrasting a situation "[w]here the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation,"[2] this Court explained that "a change [that] is merely regulatory" likely will not moot a case if "the regulatory processes leading to the change … were ad hoc, discretionary, and easily reversible actions."  *Id.*  And "[i]f the discretion to effect the change lies with one agency or individual, or there are no

---

[2] *See also Thomas v. City of Memphis*, 996 F.3d 318, 325 (6th Cir. 2021) (examining "whether the change became operative in a manner analogous to legislation … such as elected officials casting a vote or notice-and-comment rulemaking through an administrative tribunal").  Nothing of the sort occurred here.

formal processes required to effect the change, significantly more than the bare solicitude itself is necessary...." *Id.*

It is hardly surprising that Defendants' brief omits this elephant-in-the-room language. Indeed, it is fatal to Defendants' case, because ATF's 2020 Public Safety Advisory, and its subsequent 2025 letter rescinding it, are the quintessential sort of "ad hoc, discretionary, and easily reversible actions" for which this Court cautioned against a finding of mootness. In fact, ATF has "easily revers[ed]" itself not once *but twice* under the control of this President, having adopted the challenged PSA in 2020 only to reverse course *again* in 2025. *See* Gov't Br. at 1, 2. *See also League v. Bonneville Power Admin.*, 2025 U.S. App. LEXIS 15852, at *11 (9th Cir. June 26, 2025) ("The repetitive nature of BPA's actions demonstrates that ICL has a reasonable expectation of facing BPA's allegedly illegal conduct again").

Nor was there any executive order, legislative change, or other sort of higher instruction binding ATF to its chosen course of action. To be sure, Defendants focus heavily on the fact that ATF's 2025 reversal occurred after the President ordered the *entire* federal government to reconsider *all* executive actions through the *general* lens of protecting the Second Amendment. *See* Gov't Br. at 8, 14. But nothing in those instructions ordered (or even implied) that ATF should reexamine the Brady

Alternate status of any state, much less of Michigan. And certainly, nothing required ATF to reach the result that it did.[3]

To the contrary, it was ATF's choice to engage in a "comprehensive review," and its decision to reverse its policy on Michigan CPLs was entirely "discretionary" in nature, with that discretion lying "with one agency" – in fact, with just a few persons comprising the "new agency leadership at the Department of Justice and ATF." Gov't Br. at 7. These officials did not follow any "formal process" in conducting their review (because none exists), nor did they establish some "formal process" going forward, such as through a notice-and-comment rulemaking.

Rather, "ATF's new leadership" *internally* "'conducted a review'" of Michigan and federal law, and *personally* reached the conclusion that Michigan CPLs should again qualify as Brady Alternates. *See* Gov't Br. at 1-2 ("In 2020," ATF "did not believe"); at 2 (but ATF "now believes"); at 8 (2025 letter is based on "ATF's current assessment").[4] This leadership then ordered that the 2020 PSA be

---

[3] *See Protecting Second Amendment Rights*, <u>White House</u> (Feb. 7, 2025), https://tinyurl.com/5cba8sxv (directing "Attorney General [to] examine" firearm-related executive actions and "present a proposed plan of action to the President."); *see also Memorandum for all Department Employees*, <u>Off. of the Att'y Gen.</u> (Apr. 8, 2025), https://tinyurl.com/2nyfwkcb (ordering the "developing and executing [of] strategies")

[4] Other circuits have rejected similar arguments. *See, e.g.*, *Phillips v. Pa. Higher Educ. Assistance Agency*, 657 F.2d 554, 569-70 (3d Cir. 1981) ("Present intentions … are not controlling on the issue of mootness."); *United Food & Com. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988) ("'a hesitant,

reversed.  Should ATF's current leadership be replaced (as it was only a few months ago[5]), such as by a subsequent administration, then that new leadership would be perfectly free to "easily revers[e]" ATF's 2025 reversal which, in turn, reversed ATF's 2020 reversal.  *See Richmond Med. Ctr. for Women v. Gilmore*, 55 F. Supp. 2d 441, 473 (E.D. Va. 1999) (citation omitted, emphasis added) ("the *present intention* … not to prosecute … is subject to change because *nothing binds [government officials] to their current personal interpretation of the statute*").  If 'what's past is prologue,' this Court has all it needs to find a reasonable expectation of recurrence.[6]

---

qualified, equivocal and discretionary present intention not to prosecute'" means that "'the state's position could well change.").

[5] Or even more recently, with the replacement of then-Acting Director Kash Patel with now-Acting Director Dan Driscoll, both under the current administration.

[6] Imagine a scenario where a future mass shooting is perpetrated by a shooter who did not undergo a background check to acquire his firearms.  No doubt, there will be public and congressional support to increase the number of background checks conducted.  And if a presidential administration decides that higher numbers of background checks will make for good publicity, ATF might be ordered to make that a reality.  If so, ATF no doubt will view Brady Alternate status as low-hanging fruit – simply revoke the permits of a few states, and background checks will soar.  This sort of scenario is hardly speculative – ATF routinely is ordered to reach politically motivated results that have no basis in law.  And ATF is happy to oblige. *See, e.g.*, *Biden Targets 'Ghost Guns' with Executive Actions to Combat Gun Violence*, Denver7 (Apr. 8, 2021), https://tinyurl.com/5dytsubk (reporting Biden-era executive order directing ATF "to issue proposed rule[s] to help stop the proliferation of 'ghost guns'" and to restrict braced pistols); *see also Garland v. Cargill*, 602 U.S. 406, 412 (2024) (ATF bump stock rule promulgated in response to "tremendous political pressure").  *See Richmond Med. Ctr. for Women,* 55 F. Supp. 2d at 473 (the "*politically divisive nature* of the subject matter reasonably can be expected to influence … discretion").

The problem with this scenario is obvious. An agency is in no way bound to a course of action that can be undone – at will, and entirely without formal process – based on nothing more than the sensibilities of two or three government bureaucrats deliberating behind closed doors. In fact, should this Court declare this case moot and order it dismissed, *ATF could rescind its 2025 letter and put the 2020 PSA back in effect before Plaintiffs even exited the courthouse*. That is not the sort of government action which "cannot reasonably be expected to recur." *See Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (emphasis added) (no mootness when "the defendant voluntarily ceases an allegedly illegal practice *but is free to resume it at any time*").

Unsurprisingly, this Court found no mootness in *Speech First, Inc.*, when presented with facts closely resembling those here. Recounting that changes to "the University of Michigan's policy prohibiting harassing and bullying behavior" had been "approved by senior … officials," this Court found no "evidence suggesting that [the University] would have to go through the same process or some other formal process to change" its policy again. 939 F.3d at 769. The genesis of ATF's 2025 policy reversal is identical, having been approved by "ATF's new leadership," but whose approval might not be required in the future. Indeed, ATF's 2025 letter[7]

---

[7] *Open Letter to All Federal Firearms Licensees*, BATFE (May 23, 2025), https://tinyurl.com/4yu25jm5.

was not signed by "ATF's new leadership," but instead by Megan Bennett, a career ATF employee who was involved in ATF's 2020 PSA.  *See* Email, R.46-1, Page ID#835.

As this Court explained in *Speech First, Inc.*, "there is no evidence in the record that" any University official "has control over whether the University will reimplement the challenged definitions."  939 F.3d at 769 (rejecting the University's proffer that it would not reenact its policies, a "statement [without] any binding or controlling effect").  The same is true here.  No rule vests any particular ATF official with control over ATF's Brady Alternate decisions (certainly, the statute does not).  Even if it did, no senior ATF official can guarantee that a successor will not simply change course.[8]

---

[8] Non-legislative, administrative actions are inherently transitory.  Even when it comes to notice-and-comment rulemaking (worlds away from the ad-hoc letters at issue here), "it is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions." *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (collecting cases); *see also Citizens Against the Pellissippi Parkway v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (recognizing "the inherent authority of an agency to reconsider a prior decision.").  When issuing Brady Alternate letters, ATF does not even notify the public of an intended change, seek input from stakeholders, or provide written reasons justifying its policy shift.  Rather, ATF simply acts.

### 3. Defendants' Proffers of Legitimacy Fall Flat.

Next, Defendants offer a series of bald assertions as to why this Court should accept their latest 2025 flip-flop as a good-faith reversal. Of course, "[s]uch a profession does not suffice to make a case moot," as the "disclaime[r]" of "any intention to revive" unlawful conduct is just "one of the factors to be considered." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Even so, none of Defendants' rationalizations is availing.

First, Defendants attempt to buttress their recent policy reversal by suggesting it is the product of a "comprehensive review" which "occurred against the backdrop of a broader review of firearms-related matters directed by President Trump." Gov't Br. at 8; *see also id.* at 9 ("ATF reversed the challenged determination not because of this lawsuit but instead as part of a broader reassessment...."). But as explained, *supra*, Defendants only were required to "review" firearm-related matters. They were not directed to take the specific action they took here. Rather, Defendants' ultimate decision to rescind their 2020 PSA was an "ad hoc, discretionary, and easily reversible action[]." *Speech First, Inc.*, 939 F.3d at 768.

Second and relatedly, Defendants claim "there should be no dispute that ATF's 'cessation of the challenged conduct' is 'genuine'" in light of the President's executive actions. Gov't Br. at 14. But again, the President never ordered ATF to take this action, and it is Defendants' "burden to prove that [their] change is

genuine." *Speech First, Inc.*, 939 F.3d at 769 (changing course "after the complaint was filed … increases the … burden to prove that [the] change is genuine"). Defendants have failed to bear their burden, failing to explain how their 2025 reversal could not simply be reversed again.

Third, Defendants posit that any future reversal would constitute a "hypothetical future determination" and thus "likely would not present substantially the same legal controversy," as it would be based on a unique "administrative record." Gov't Br. 15. But as is typical of their brief, Defendants apply the wrong standard. In fact, they focus precisely on what courts have explained is *irrelevant* to the mootness inquiry. As this Court explained, "for the challenged conduct to recur, the State need not reimpose the 'selfsame' mandate that it rescinded," but rather "a mandate 'similar' enough to the old mandate to present *substantially the same legal controversy*…." *Resurrection Sch. v. Hertel*, 35 F.4th 524, 529 (6th Cir. 2022) (citation omitted, emphasis added). Defendants demur that any future action "would necessarily rest on a different factual record," Govt. Br. at 16. But if that were the test for mootness – merely a nonidentical administrative record – then mootness would be the "*usual rule*," which it clearly is not. *Speech First, Inc.*, 939 F.3d at 767. Thus, as the D.C. Circuit observed, courts must not "focus[] on whether the *precise historical facts* that spawned the plaintiff's claims are likely to recur," but rather "whether the *legal wrong* complained of by the plaintiff is reasonably likely

14

to recur." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009) (emphasis added).  It is more than reasonable to suspect that the "legal wrong" here – the revocation of Michigan's Brady Alternate status by relying on something other than state and federal law – could easily recur in the future.

Defendants next speculate that "a Michigan judicial decision may alter Michigan's interpretation of state law requirements in ways that could bear on any future ATF determination."  Govt. Br. at 16.  But Plaintiffs have not asked this Court for an advisory opinion about *possible future* iterations of state or federal law, but rather to declare the meaning of the federal and state statutes *as they currently exist*. Indeed, this Court tasked the parties on remand with investigating whether there was "a state-court decision that dilutes the apparent meaning of the statute or perhaps an opinion by the Michigan Attorney General that casts light on the statute."  *Gun Owners of Am., Inc. v. United States DOJ*, 2021 U.S. App. LEXIS 33554, at *9 (6th Cir. Nov. 9, 2021).  But no such decision or opinion was found (*see* Opening Br. at 37, n. 20), and Defendants cannot avoid an unfavorable ruling simply by speculating that such a decision or opinion might arise in the future.

Fourth, Defendants fall back on their newly minted proffer that "ATF does not 'continue[] to defend' the 2020 Advisory."  Gov't Br. at 14.  But that half-hearted repudiation does not count for much, as ATF's history has been nothing *but* a series of 'flip-flops,' with its 2020 PSA *itself* representing a repudiation of ATF's earlier

determination.  *See League v. Bonneville Power Admin.*, 2025 U.S. App. LEXIS 15852, at \*11 ("The repetitive nature of BPA's actions demonstrates that ICL has a reasonable expectation of facing BPA's allegedly illegal conduct again").  Indeed, "[w]hat matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct."  *Fikre*, 601 U.S. at 244.  Here, Defendants can promise nothing of ATF's "future conduct" especially under a subsequent administration.  Sure, they declare that ATF's "previous, contrary determination was incorrect," Gov't Br. at 14-15, but they conspicuously fail to explain *why* that is so.  This sort of 'sorry, not sorry' approach, devoid of specifics, provides the Court no meaningful way to gauge the sincerity – or permanence – of ATF's newfound repentance.[9]

Particularly given ATF's checkered past, this Court should have cause for concern.  Indeed, perhaps unique among federal agencies, ATF is *infamous* for rejecting its previous positions while offering insincere 'mea culpas' – not because Congress changed the law, but merely because an administration changed hands – or simply because ATF changed its mind.  Thus, dealing with ATF has been described as a "regulatory roller coaster" and "a whiplash-inducing regulatory odyssey."[10]  In

---

[9] *See Nauman v. Wormuth*, 2024 U.S. Dist. LEXIS 219294, at \*22 (D. Kan. Dec. 4, 2024) ("Defendants have not attested that they won't issue another [military protective order].  They haven't revised the policy or procedure for issuing MPOs.")

[10] Testimony of Alex Bosco, *ATF's Assault on the Second Amendment: When Is Enough Enough?*, Joint Hearing Before the Subcommittee on Economic Growth,

fact, *this very Court* has noted "the ATF's frequent reversals on major policy issues…." *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446, 461 (6th Cir. 2021) *superseded by Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890 (6th Cir. 2021). And so unsurprisingly, court after court has ruled ATF's actions to be arbitrary and capricious.[11]  If given the opportunity, a subsequent administration could (and in all likelihood will) repeal ATF's *current* position with another stroke of a pen.  Plaintiffs need not wait for harm to befall them *again* before obtaining relief.

### 4. This Court Can Still Grant Effectual Relief.

Defendants claim this case is moot because "the court may no longer grant effectual relief," on the theory that "ATF has reconsidered the determination" and therefore "ATF's previous policy no longer has any effect...." Gov't Br. at 9.  Having thus reversed their latest "ad hoc, discretionary, and easily reversible action," *Speech First, Inc.* 939 F.3d at 768, Defendants claim it is "*unlikely* that ATF will resume the challenged conduct in the *foreseeable* future."  Gov't Br. at 15 (emphases added).  But Defendants' shortsightedness does not moot this case, and this Court can still grant effectual relief.

---

Energy Policy, and Regulatory Affairs 10 (Mar. 23, 2023), https://tinyurl.com/4sjut6za.

[11] *See, e.g.*, *Mock v. Garland,* 75 F.4th 563 (5th Cir. 2023); *Mock v. Garland*, 2024 U.S. Dist. LEXIS 105230 (N.D. Tex. June 13, 2024); *Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507 (8th Cir. 2024); *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, 697 F. Supp. 3d 601 (N.D. Tex. 2023); *F.J. Vollmer Co. v. Higgins*, 23 F.3d 448 (D.C. Cir. 1994).

As this Court recently explained, "'[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.' A case is moot, then, when a plaintiff has received all the relief he sought." *Doster v. Kendall*, 2025 U.S. App. LEXIS 11679, at *5 (6th Cir. May 12, 2025) (citation omitted). The obvious corollary is that, if Plaintiffs have "not obtained everything [they] ask[] for," then "the Court can still grant effectual relief. Thus, the case is not moot." *Browder v. Wormuth*, 2024 U.S. Dist. LEXIS 229365, at *10 (D.D.C. Dec. 19, 2024). Indeed, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 898 (6th Cir. 2014). Here, resolution of Plaintiffs' appeal on the merits would certainly "make a difference" to Plaintiffs' legal interests.

Consider the relief Plaintiffs sought in the first place. When Defendants revoked Michigan's Brady Alternate status in 2020, Plaintiffs complained that Defendants' action was "*ultra vires*, ... as federal law does not grant the agency authority to administratively review and enforce compliance with the provisions of 18 U.S.C. § 922(t)(3)." Compl. ¶64, R.1, Page ID#17. Accordingly, Plaintiffs sought a "declaratory judgment ... that the Michigan PSA exceeds the scope of Defendants' authority" under the Gun Control Act, as well as an "order permanently enjoining Defendants from ... in any other way interfering with use of the Michigan

concealed carry permit in lieu of a NICS check."  Compl. Prayer for Relief ¶¶b-c,
R.1, Page ID#20.

Even now, Defendants do not concede that they lack statutory authority to
unilaterally recognize (or reject) Brady Alternate statuses.  In fact, they contemplate
*continuing* to issue future determinations.  *See* Gov't Br. at 16 (claiming a "future
decision would necessarily rest on a different factual record and would include a
new explanation from the agency").  Plaintiffs therefore maintain a concrete interest
in the outcome of this litigation, and issuance of the relief sought would "make a
difference" to that interest.  *Doster*, 2025 U.S. App. LEXIS 11679, at *5.
Declaratory and injunctive relief would protect Plaintiffs from unlawful deprivations
of a statutory benefit that Defendants maintain the ability to revoke (and have
revoked) on a whim.

Plaintiffs maintain an interest in ensuring that their newly reinstated statutory
benefits will persist beyond the day, the month, or even the current presidential
administration.  In contrast, the only "foreseeable future" that Defendants can
foresee is *one in which they are in charge*.  Gov't Br. at 9.  But when Plaintiff Roberts
again renews his Michigan CPL (which currently is valid through February 24,
2026), that license will remain valid well into the next administration.  *See* MCL
§ 28.425*l*.  The same is true for Plaintiff GOA's numerous other members and
supporters, who continually will face license expiry and renewal irrespective of

ATF's *present* view of their statutory eligibility. As Chief Judge Sutton previously noted at oral argument, Brady Alternate status is "valuable to somebody because once you have it, you get it no matter what happens in the intervening years. That has value. There's a reason for doing it."[12] This Court should protect Plaintiffs' "reason for doing it" – their statutory benefit – against future bureaucratic encroachment in "the intervening years." Indeed, the federal and Michigan statutes conferring such a benefit have not changed in decades. The only variable here is Defendants' *own continually shifting opinions* on the matter.

## B. Defendants' Actions Are Capable of Repetition, Yet Evading Review.

A defendant's action is "capable of repetition, yet evading review" – and therefore a challenge is not moot – when "'there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Walters v. Dale*, 53 F.4th 176, 189 (6th Cir. 2022). However, "[r]ecurrence of the issue need not be more probable than not; instead, the controversy must be capable of repetition." *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016). Finally, only a "reasonable showing" of recurrence likelihood is required. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Defendants claim that their 2020 revocation of the

---

[12] Oral Argument at 21:01, *Gun Owners of Am., Inc. v. DOJ*, No. 21-1131 (6th Cir. Oct. 26, 2021), https://tinyurl.com/bx47mpsr.

Michigan CPL as a Brady Alternate is not "capable of repetition yet evading review." Gov't Br. at 16. But their supporting arguments are meritless, at best.

First, Defendants claim this case "'was a product of' a specific agency record and explanation," and thus any future agency action would not be "this [dispute] in a similar form again." Gov't Br. at 16-17 (alteration in original). But that argument fails for the reasons already discussed. *See* Section I.A.3., *supra*. Indeed, this Court has explained that the government "need not reimpose the 'selfsame' mandate that it rescinded" in order for a challenger to maintain standing. *Resurrection Sch.*, 35 F.4th at 529. Rather, it "would need to impose a mandate 'similar' enough to the old mandate to present substantially the same legal controversy as the one presented by the plaintiffs' complaint." *Id.*; *see also Del Monte Fresh Produce*, 570 F.3d at 324 (Defendants' "approach focuses on whether the *precise historical facts* that spawned the plaintiff's claims are likely to recur, rather than whether *the legal wrong* complained of by the plaintiff is reasonably likely to recur…."). Future agency record and explanation notwithstanding, a future revocation would be "similar enough" and take Plaintiffs back to square one – a challenge to Defendants' underlying *statutory authority* to revoke the Brady Alternate status of a Michigan CPL, and a dispute about the legal interplay between state and federal laws that have not changed in decades.

Second, Defendants theorize that ATF's Brady Alternate letters are not of "inherently short duration," but instead "do not come with any inherent expiration date," noting that the 2020 PSA "remained in effect for more than five years." Gov't Br. at 17. But that is a straw man. Just because a Brady Alternate letter *might* remain in effect for years, as a theoretical matter, is no guarantee that one *will*, as a practical matter. ATF's Brady Alternate letters are not like Michigan CPLs – good for five years. Since there is no fixed process or timeline for issuing or rescinding Brady Alternate letters, there is nothing stopping one from being effective for five years – versus *five minutes*. Agency action that can be done and undone at will is inherently transitory, of indefinite duration, and therefore capable of evading review.

Third, Defendants surmise that this sort of case is not "evading review" because "the parties have litigated this case to a final judgment in the district court, through a full appeal in this Court, and to a second final judgment on remand." Gov't Br. at 17. But this is plainly not what the Supreme Court meant by the language "evading review." Rather, as the Court subsequently made clear, there is no mootness to a government action that evades "considered plenary review in this Court." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 547 (1976). Thus, it is "complete judicial review" that is required, *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774

22

(1978) – not merely one district court's clearly erroneous dismissal on standing.  *See also Walters*, 53 F.4th at 189 (same).[13]

ATF's issuance of Brady Alternate letters is quintessentially the sort of government action that is "capable of repetition yet evading review."  First, such letters can be issued, rescinded, and reissued at will – with the stroke of a pen (in this case, a digital signature).  And they are of inherently flexible duration, because they rely on nothing more than the now-current views of a few bureaucrats.  If ATF's recent 2025 letter serves to moot this case, then it is unclear what sort of informal government action could *not* render a case moot.

## II.    THIS COURT SHOULD ISSUE A MERITS JUDGMENT AND REMAND FOR A FEE AWARD.

Plaintiffs devoted significant portions of their opening brief to addressing not only the erroneous dismissal below, but also to the underlying merits of their now-five-plus-year-old claims.  In response, other than pausing briefly *to concede*

---

[13] Other courts are uniform on this issue.  *See Del. Dep't of Nat. Res. & Env't Control v. EPA*, 746 F. App'x 131, 134 (3d Cir. 2018); *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020); *Simes v. Ark. Jud. Discipline & Disability Comm'n*, 734 F.3d 830, 835 (8th Cir. 2013) (implied); *Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 858 (9th Cir. 2022); *Bourgeois v. Peters*, 387 F.3d 1303, 1309 (11th Cir. 2004); *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009); *Associated Energy Grp., LLC v. United States*, 131 F.4th 1312, 1318 (Fed. Cir. 2025); *Sewell v. Sec'y of HHS*, 2012 U.S. Claims LEXIS 647, at *6 (Fed. Cl. May 25, 2012); *Sea Shepherd N.Z. v. United States*, 639 F. Supp. 3d 1367, 1382 (Int'l Trade 2023).

*everything* (Gov't Br. at 10, 12, 17-18 at n.2), Defendants do not substantively respond, instead focusing entirely on their newfound mootness argument. As this Court has explained, such failure to contest Plaintiffs' arguments results in waiver. *Talmer Bank & Tr. v. Minton Firm, P.C.*, 660 F. App'x 439, 446 n.5 (6th Cir. 2016) ("Like an appellant, an appellee can waive an argument by failing to brief it."). And absent any opposition to Plaintiffs' substantive arguments, this Court should grant Plaintiffs the relief they have long sought.[14]

Accordingly, this Court should (i) reject Defendants' eleventh-hour attempt to moot this case, (ii) find that MCL § 28.426 qualifies for Brady Alternate status under 18 U.S.C. § 922(t)(3), (iii) declare that the 2020 PSA was unlawfully promulgated, (iv) enjoin Defendants from future attempts to revoke the Brady Alternate status of Michigan permits absent an intervening change in state or federal law, and (v) vacate

---

[14] Even if this Court were to find that this case is moot, the district court's clearly erroneous decision on standing should be vacated. *See* Gov't Br. at 17-18 n.2 ("The government no longer disputes that Roberts and, by extension, the Gun Owners of America had standing to bring this challenge"); 11 n.1 ("the government would not oppose any request from plaintiffs to vacate the district court's judgment."). Indeed, "[t]he established practice of the [Supreme] Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). And if this Court finds this appeal moot, there can be no question that mootness "result[ed] from unilateral action of the party who prevailed below." *United States Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994).

the judgment below and remand the case to the district court for an award of attorneys' fees pursuant to the Equal Access to Justice Act.

## CONCLUSION

Defendants' mootness arguments fail.  For the foregoing reasons, this Court should find that Plaintiffs had and continue to have standing, and it should grant their requested relief.

Respectfully submitted,

*/s/ Robert J. Olson*
Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Ste. 4
Vienna, VA 22180
T: (703) 356-5070
rob@wjopc.com

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
T: (601) 852-3440
stephen@sdslaw.us

Kerry Lee Morgan
PENTIUK, COUVREUR & KOBILJAK, P.C.
2915 Biddle Avenue, Suite 200
Wyandotte, MI 48192
T: (734) 281-7100
kmorgan@pck-law.com
Counsel for Appellants

## <u>CERTIFICATE OF COMPLIANCE</u>

IT IS HEREBY CERTIFIED:

1. That the foregoing Reply Brief for Appellants complies with Fed. R. App. P. 32(a)(7)(B)(ii) as it includes 6,099 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman.

*/s/ Robert J. Olson*
Robert J. Olson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Robert J. Olson*
Robert J. Olson